SAMUEL, Judge.
The decedent was a resident of and domiciled in the Parish of Orleans, State of *288 Louisiana, at the time of his death in New Orleans on May 19, 1960. He had never been married and was not survived by any forced heir. He left a last will and testament in the olographic form under the terms of which he gave and bequeathed all of his property to “ * * * the National Institutes of Health, United States Public Health Service, for research wholly in cure and prevention of chronic spastic constipation”, and appointed “ * * * the United States District Attorney for the district comprising Orleans Parish, Louisiana, or his successor in office, * * * ” as executor without bond.
In due course the will was probated and the then United States Attorney for the Eastern District of Louisiana qualified and was recognized as testamentary executor; the National Institutes of Health, United States Public Health Service, through the Acting Surgeon General of the United States, accepted the bequest; the Secretary of Health, Education and Welfare approved the acceptance by the Acting Surgeon General; and an inventory, reflecting total assets in the amount of $349,797.33, was taken, approved and homologated.
John W. Shepard, Jr., who alleges he is a nephew and the only surviving heir of the decedent, filed an opposition to the will seeking a judgment decreeing the bequest to the National Institutes of Health null and void and ordering that the property be distributed according to law. The Inheritance Tax Collector for the Parish of Orleans, through his attorney, and the State of Louisiana, through its Attorney General, intervened because their interests relative to inheritance taxes and the collection thereof were directly affected and also opposed the bequest.
After a trial on the merits there was judgment in the district court decreeing the bequest in decedent’s will to be valid and subsisting, ordering the executor to carry out the terms of the will, and dismissing the opposition. John W. Shepard, Jr. has appealed and both intervenors have filed briefs in this court praying for a reversal of the trial court judgment.
Appellant makes three contentions: (1) The United States Government, its agencies and subdivisions are incapable of inheriting under the law of the State of Louisiana, a question which, as far as we have been able to determine, is res nova in Louisiana; (2) There can be no valid acceptance of the bequest under 42 U.S.C.A. § 219(a), which provides that no gift shall be accepted which is conditioned upon any expenditure not to be met therefrom or from the income thereof unless such expenditure has been approved by Act of Congress; and (3) The National Institutes of Health, United States Public Health Service, actually is incapable of carrying out, and does not intend to carry out, the conditional provision of the bequest. In view of the fact that we reach the conclusion that appellant’s first contention is correct, there is no need for us to consider the other two contentions and we do not do so.
The Public Health Service of the Department of Health, Education and Welfare is administered by the Surgeon General under the supervision and direction of the Secretary of Health, Education and Welfare. 42 U.S.C.A. § 201. Since its creation in 1889 as the Marine Hospital Service of the United States, the Service always has been and is now a part of the executive branch of the United States Government under the supervision and control of the President of the United States. Thus the Service is a body politic and, to all intents and purposes in connection with the issue here involved, the United States Government itself. In any event, the same considerations relative to capacity to inherit are applicable equally to the United States and to the National Institutes of Health.
Each state possesses the sovereign right to regulate testamentary dispositions; matters concerning the devolution of property are reserved by the Tenth Amendment of the Federal Constitution to the several *289 states and nothing in the Federal Constitution forbids the legislature of a state to limit, condition or even abolish the power or capacity to give or receive property within the state’s jurisdiction by testamentary disposition. United States v. Perkins, 163 U.S. 625, 628, 16 S.Ct. 1073, 41 L.Ed. 287; United States v. Fox, 94 U.S. 315, 320, 24 L.Ed. 192; Mager v. Grima, 8 How. 490, 49 U.S. 490, 503, 506, 12 L.Ed. 1168.
As stated by Mr. Chief Justice Taney in the case of Mager v. Grima, supra, at page 492 of the Howard citation, page 506 of the U.S. citation and page 1170 of the L.Ed. citation:
“Now the law in question is nothing more than an exercise of the power which every state and sovereignty possesses, of regulating the manner and term upon which property, real or personal, within its dominion may be transmitted by last will and testament, or by inheritance; and of prescribing who shall and who shall not be capable of taking it.”
In the case of United States v. Burnison, 339 U.S. 87, 91, 70 S.Ct. 503, 506, 94 L.Ed. 675, 681, the court said:
“The United States would have no semblance of a claim here were it not for wills probated under California law. The Fox case is only one of a long line of cases which have consistently held that part of the residue of sovereignty retained by the states, a residue insured by the Tenth Amendment, is the power to determine the manner of testamentary transfer of a domiciliary’s property and the power to determine who may be made beneficiaries. * * * ”
The Supreme Court of the United States uniformly has held that, in conformity with their exclusive power over testamentary dispositions, the several states may refuse to allow the United States to inherit and such refusal is not in violation of the Federal Constitution. United States v. Fox, supra; United States v. Burnison, supra. The cited cases directly upheld as valid and constitutional laws of New York and California which prohibited the United States from inheriting under a testamentary disposition.
In Louisiana those having the capacity to receive are set out in Article 1470 of the LSA-Civil Code, which reads as follows:
“All persons may dispose or receive by donation inter vivos or mortis causa, except such as the law expressly declares incapable.” LSA-C.C. Art. 1470.
Article 433 of the LSA-Civil Code provides, in part:
“Corporations legally established are substituted for persons, and their union which renders common to all those who compose them, their interests, their rights and their privileges, is the reason why they are considered as one single whole. Hence it follows * * * ; that they are capable of receiving legacies and donations; * * ” LSA-C.C. Art. 433.
The executor does not contend that the United States Government or its agency is a corporation under the quoted Civil Code Article 433. Nor does he argue that they have the capacity to receive under various Louisiana cases concerned with donations to charitable, pious and educational institutions. Nonetheless, we have examined many of these cases and find that they are concerned with whether or not the legatee was a corporation within the meaning of Article 433 or are otherwise in-apposite. See Succession of Fisher, 235 La. 263, 103 So.2d 276; Thompson v. Société Catholique D’Education, etc., 157 La. 875, 103 So. 247; Succession of Hutchinson, 112 La. 656, 36 So. 639; Succession of Meunier, 52 La.Ann. 79, 26 So. 776, 48 L.R.A. 77; Succession of Hardesty, 22 La. Ann. 332; Executors of McDonogh v. Murdoch, 15 How. 366, 367, 56 U.S. 367, 14 L.Ed. 732.
*290 The executor does urge that the National Institutes of Health is capable of inheriting under LSA-Civil Code Article 1470 and relies, as indicative of such capacity, upon LSA-R.S. 47:1204, a Louisiana Gift Tax Statute which provides that gifts made to the United States, the State of Louisiana, etc. shall he exempt from the tax imposed thereby.
That statute has no application to the instant case. Its application, if any does exist (and that question is not before us), necessarily would be restricted to gifts inter vivos and here we are concerned only with a donation mortis causa. By its terms the statute has reference only to taxation of donations inter vivos; it is not concerned with donations mortis causa and our Inheritance Tax Exemption Statute, LSA-R.S. 47:2402, which does control taxation of donations mortis causa, makes no mention of the United States. This same argument was raised in In re Burnison’s Estate, 33 Cal.2d 638, 204 P.2d 330, a case subsequently decided by the Supreme Court of the United States as United States v. Burnison, supra, in which, much more appropriately than here, there was a California Inheritance Tax Statute exempting the United States. But in holding the Government incapable of inheriting the California Court rejected the argument and said, at page 334, of 204 P.2d:
“Nor does it strengthen the Government’s position to refer to section 13841 of the Revenue and Taxation Code, which exempts ‘property transferred to * * * the United States’ from the California inheritance tax. There is no necessary connection between a statute regulating succession to property and one setting forth tax exemptions, and in making laws relating to these two subjects, over which it had plenary authority, the legislature was not bound to shape its respective enactments to fit any particular pattern or limit its right to impose such conditions as it deemed appropriate in the distinct fields.”
Other than as provided by LSA-Civil Code Article 1470 and 433, we know of no provision of Louisiana law by which the legatee in the instant case could have the capacity to receive the bequest. As the executor does not contend that Article 433 is applicable, and clearly it is not, for the reason that neither the United States Government nor the National Institutes of Health, United States Public Health Service, is a corporation within the meaning of that article, the legatee must come within the provisions of Article 1470, i. e., it must be included in the words “All persons”, or it does not have the capacity to receive the bequest. We must determine whether or not the words “All persons” as used in Article 1470 include the United States Government or its agency.
The concluding clause of Article 1470, that part which follows the comma and reads “ * * *, except such as the law expressly declares incapable”, has reference to those persons rendered incapable of disposing or receiving, by either absolute or relative incapacities, by various codal articles or other law. Examples are to be found in several Civil Code Articles closely following Article 1470. Article 1475 requires that the donor be of sound mind; Articles 1476-1479 have reference to minors and their incapacities; Article 1481 deals with the incapacities of those who live in open concubinage; and Articles 1483, et seq., are concerned with the incapacities of certain illegitimate children and their parents. All of these articles declaring certain persons incapable have reference only to natural persons. Our attention has not been called to a single instance involving Article 1470 in which the law declares incapable any other than a natural person and we know of none.
We are aware of only one provision of the Civil Code which proports to define the word “person” as used in the code. That provision is Article 3556(23) which reads:
“Whenever the terms of law, employed in this Code, have not been par *291 ticularly defined therein, they shall be understood as follows:
* $ * * * *
23. Person. — Person is applicable to men and women, or either.” LSA-C.C. Art. 3556(23).
In our opinion “persons” as used in Article 1470 refers only to natural persons. If the word was not so restricted there would have been no need for that portion of the quoted Article 433 which provides that corporations legally established are substituted for persons and are capable of receiving legacies and donations.
In addition, a careful reading of Article 1470 convinces us that the article could not have been intended to include such entities as the United States Government or one of its agencies. The first part of the article, preceding the comma, provides: “All persons may dispose or receive by donation inter vivos or mortis causa, * * * ” (emphasis ours). The verbs “dispose” and “receive” have the same subject, “persons”. Thus the article actually provides that “persons” may dispose or, the same “persons”, may receive by the two types of donation. It contemplates as “persons” only such as, in the absence of a law declaring them incapable, could dispose and receive both by donation inter vivos and by donation mortis causa. In view of LSA-C.C. Art. 1469, which provides that a donation mortis causa (in prospect of death) is an act to take effect when the donor shall no longer exist and by which he disposes the whole or a part of his property, it is readily apparent that the United States Government and its agencies are completely incapable of making a donation mortis causa. Therefore, there could have been no intent to include such bodies within the meaning of the word “persons” as used in Article 1470.
We conclude that neither the United States nor the National Institutes of Health has the capacity to receive a donation mor-tis causa under the law of Louisiana.
For the reasons assigned, the judgment appealed from is annulled and reversed and it is now ordered that there he judgment herein in favor of John W. Shepard, Jr. decreeing the bequest in the will of Edward L. Shepard to the National Institutes of Health, United States Public Health Service, null and void and ordering that the decedent’s property be distributed according to law. These succession proceedings are remanded to the Civil District Court for the Parish of Orleans for the purpose of making such distribution.
Reversed, rendered and remanded.