THOMAS B. CRENSHAW, *County Court Clerk,* v. W. C. KNIGHT'S ESTATE *et al.*

(*Jackson.* April Term, 1913.)

COLLATERAL INHERITANCE AND SUCCESSION TAX. **Life or mortality tables are not applicable in valuing life annuities, where annuitant is in a very low state of heath.**

The statute (Shannon's Code, sec. 737), requiring the fixing of the cash value of annuities and life estates for the assessment of the collateral inheritance and succession tax, and providing that, in fixing the value, the computation shall be made by the Carlisle Life Tables, whenever the use thereof is necessary or applicable, does not make the Carlisle Tables conclusive; but it is the duty of the officers and the courts to hear and consider testimony as to the age, habits, and health of the annuitant or life tenant, and the character of his occupation, if it be hazardous, and where the life annuitant or life tenant is in a very low state of health, with little promise of life, it is improper to consider life or mortality tables in determining the expectancy of life.

Code cited and construed: Sec. 737 (S.).

Acts cited and construed: Acts 1893, ch. 174, sec. 12.

Cases cited and approved: Carnes v. Polk, 5 Heis., 244; Railroad v. Spence, 93 Tenn., 173; State v. Alston, 94 Tenn., 674; Railroad v. Berry, 118 Tenn., 581.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County (1st Division).—J. P. YOUNG, Judge.

GILMER P. SMITH, for Crenshaw

JAMES H. WATSON, for Knight.

---

MR. JUSTICE GREEN delivered the opinion of the Court.

This is a proceeding brought by the county court clerk of Shelby county to recover from Mrs. Cornelia Roach the inheritance tax on an annuity which she took under the will of W. C. Knight. She took under the will of deceased a bequest of $50 per month for life, upon which a collateral inheritance tax is due under the provisions of section 12, ch. 174 of the Acts of 1893 (Shannon's Code, sec. 737).

On the hearing before the county chairman, he fixed the value of the said annuity at $7,000, looking alone to the Carlisle Life Tables in making this computation.

Upon appeal to the circuit court, the judge there heard other evidence as to the health and physical condition of Mrs. Roach, and upon consideration of this other evidence the circuit judge found her expectancy of life much less than the Carlisle Tables would indicate, and upon this other evidence, his honor put a valuation of $1,500 upon this annuity.

From the judgment of the circuit court, the county court clerk has prayed an appeal to this court, and insists that it was error to look to anything except the Carlisle Life Tables in estimating the value of said annuity.

Section 12 of chapter 174 of the Acts of 1893 (section 737 of Shannon's Code) is as follows:

"And it shall further be the duty of such appraiser to assess and fix the cash value of all annuities and life estates growing out of said estates, upon which annuities and life estates the collateral inheritance tax shall be immediately payable, out of the estate, at the rate of such valuation, but shall bear no interest till the lapse of twelve months from the death of the decedent; and, in fixing the value of such annuities and life estates, the computation shall be made by the Carlisle Life Tables whenever the use of life tables is necessary or applicable."

Medical testimony introduced in this case showed that Mrs. Roach was a married woman about forty-three years of age and the mother of two children. She had undergone some serious operations, and had a weak heart, for which it was necessary to take strychnine frequently. She was described as a complete physical wreck, but not confined to her bed. Her physician testified that she would probably live from one year to five years.

On this testimony the circuit judge found that the expectancy of Mrs. Roach was two and one-half years, and upon this basis fixed a value upon her annuity for purposes of taxation.

It will be observed that the section of the act of 1893 above quoted does not undertake to say that the Carlisle Life Tables should be used as a basis of computation in every case where it is necessary to value a life estate. but the provision is that such tables should be used

whenever· a case ·arises in· which their úse·'is˜necessary or ·applicable.

We have no hesitancy in concluding that ·the ·.use ·of life tables is· not necessary or applicable to this case..

· The statutory direction to the appraiser· is to. fix the cash value of all annuities and life estates. ·and. in mak-ing his computation to use the Carlisle Tables—not· as a fixed standard in every case, but only in cases to ·the settlement of which life tables are ·applicable ·or .neces-sary.

The ·rules with respect to the use of mortality tables in the determination of an expectancy of life· are well settled in Tennessee. While the use of such tables is permitted, and their value recognized,· they are not con-clusive. ˙It is in fact the duty of commissioners, juries, and courts, in passing upon such matters, to hear testi-mony as to the age, habits, and health of the person whose expectation of life is being considered, and to take into consideration the character of his occupation if it be hazardous. If it appears, without ˙controversy, that such a person is in a very low state of health, .de-bilitated, and incurably afflicted, with scant hold upon life and little promise thereof, it would doubtless be improper to consider life tables at all. Such a person could have no expectancy, within the purview of· the rule of law which justifies ·the introduction. of such ta-bles. *Carnes & Perry v. Polk,* 5 Heisk., 244; *Railroad* v: *Spence,* 93˙Tenn., 173, 23 S. W:, 211; 42 Am. St.˙Rep., 907; *Railroad·v: Berry,* 118 Tenn., 581, 102 S. W.,· 85·

In the valuation of a life estate, the general rule "is to calculate the value according to the probable duration of the life estate, based upon the tables of life expectancy, but taking into consideration the state of the tenant's health and other circumstances of the particular case." 16 Cyc., 616.

It was with the foregoing rules of law in mind that the legislature passed the act of 1893.

If we concede it was within the power of the legislature, under the privilege tax doctrine of *State v. Alston,* 94 Tenn., 674, 30 S. W., 750, 28 L. R. A., 178, to have enacted that the value of all annuities and life estates would be arbitrarily fixed by the Carlisle Life Tables, when computing the inheritance tax due thereon, nevertheless the fact is no such enactment has been attempted.

On the contrary, the legislature has directed the use of such tables only in cases to which this method of computation is applicable.

From the previous statement of the facts of this case, considered in connection with accepted rules as to the use of mortality tables, it must be obvious that the present case is not one in which the use of life tables is necessary or applicable.

We have examined the authorities from other States which our attention has been called, but they are not point, owing to the peculiar phraseology of our stat-

The action of the circuit judge, therefore, was correct, and his judgment must be affirmed.