FIRST NAT. BANK OF MEMPHIS v. McCANLESS, COM'R OF FINANCE AND TAXATION.*

(*Nashville,* December Term, 1945.)

Opinion filed June 29, 1946.

*Reprinted and annotated, 168 A. L. R., 266.

Roy H. Beeler, Attorney-General, William F. Barry, Solicitor-General, and C. W. Tuley, Assistant Attorney-General for appellant.

John Vorder Bruegge, of Memphis, and Bass, Berry & Sims, of Nashville, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

This suit was brought by the executor of Mrs. Clara H. Robertson, who died in Memphis on June 13, 1942, to recover an alleged excessive charge by way of inheritance tax which was exacted of the complainant by the Commissioner of Finance and Taxation. There was a decree below for the executor, from which the commissioner has appealed.

Mrs. Robertson left a will by which she gave the bulk of her estate to her husband. He died some forty-nine days before she did. He left as his issue an only daughter, Mrs. Louise R. Wilbourn. She was the daughter of Mr. Robertson by a previous marriage. She took the property left to her father by reason of our lapsed legacy statute as amended, appearing now in chapter 61 of the Acts of 1941. This act is a reproduction, with slight

116

change not here material, of section 8134 of the Code of 1932. The Act of 1941 runs as follows:

"Section 1: That Section No. 8134 of the 1932 Code of Tennessee be, and the same is hereby amended to read as follows:

"Whenever the devisee or legatee to whom, or any member of a class to which, an immediate devise or bequest is made, dies before the testator, or is dead at the making of the will, leaving issue which survives the testator, said issue shall take the estate or interest devised or bequeathed which the devisee or legatee or the member of the class, as the case may be, would have taken, had he survived the testator, unless a different disposition thereof is made or required by the will."

Section 1259 *et seq.* of the Code setting up our inheritance tax or succession tax law graduates the tax according to the class to which the recipient belongs, as will be hereafter noted. The executor contended that Mrs. Wilbourn was to be taxed as a Class A recipient upon which basis she would have been liable for $40,817.75. The Commissioner contended that she should be taxed as a Class B recipient, upon which basis she would have been liable for $104,041.60. The executor, whose duty under the statute was to pay the tax, paid in the larger sum, under protest, so far as it exceeded the amount for which Mrs. Wilbourn would have been liable as a Class A recipient. The difference is $63,223.85, for which the executor sues.

Our inheritance tax law originated in 1891, Chapter 25, Section 6, of the Extra Session of that year. See also Chapter 174, and Section 7 of Chapter 89 of the Acts of 1893. It was first a collateral inheritance tax excepting lineal descendants, husband, wife, mother and father. The original acts were amended from time to time and by the Code of 1932, section 1259 *et seq.*, there were taxed all

transfers "(a) by a will, (b) by statutes regulating descent and distribution of property upon the death of the owner," and as counsel for the executor say in their brief, "(c) any transfer of property in any other manner by operation of law upon the death of any person."

As before indicated, the recipients of a decedent's bounty are divided into two classes, Class A being entitled to greater exemptions and being taxed at a lesser rate than Class B.

These recipients (Code Sec. 1266) are included in Class A, "Husband, wife, son, daughter, lineal ancestor or lineal descendant, legally adopted child and lineal descendant of such adopted child."

These recipients (Code Sec. 1266) are included in Class B, "Any other relative, person, association or corporation not specifically designated in Class A."

■ Such classification was held reasonable in *State* v. *Alston,* 94 Tenn. 674, 30 S. W. 750, 752, 28 L. R .A. 178, because "the moral claim of collaterals and strangers is less than that of kindred in the direct line, and the privilege is therefore greater."

■ From *State* v. *Alston, supra,* to *Hutchison* v. *Montgomery,* 172 Tenn. 375, 112 S. W. (2d) 827, this tax has always been held to be a privilege tax and a tax on the privilege of taking property from a decedent, not a tax on a decedent's privilege of disposition of his property.

The rate of taxation is determined by the relation of the recipient to the former owner, the relation of such recipient to the person from whom he takes. Although the contrary contention is very strongly pressed upon us, we cannot agree that Mrs. Wilbourn in this case took from her father rather than from her stepmother, Mrs. Robertson.

■ A maxim of the law is *Nemo dat qui non habet.* Mr. Robertson never owned this property. He had been dead many days when his wife died and the property was hers until she passed away. Never having the property, Mr. Robertson never gave it. His daughter did not take from him.

This conclusion is made plain by our cases construing the lapsed legacy statutes. In *Dixon* v. *Cooper,* 88 Tenn. 177, 12 S. W. 445, the beneficiary of a will undertook to dispose of his expectancy under that will by a will of his own. He died, however, without issue, before his testamentary benefactor. It was held that a specific disposition of this expectancy made in the beneficiary's will in favor of his wife was without effect. That the legacy lapsed and the property reverted to the heirs or distributees of the original testator.

In *Strong* v. *Ready,* 28 Tenn. 168, the devisee died without issue before the death of the testator and it was held that the devise did not go to the devisee's heirs but lapsed and the estate reverted to the heirs of the testator.

So it follows that Mr. Robertson could not have disposed of any of the estate here involved by his will, nor could he have passed it to his heirs or distributees under the statutes of descent and distribution, nor in any other manner. In short, the property was never his.

The argument is that Mrs. Wilbourn took this estate by operation of law, the lapsed legacy statute, as the sole heir and distributee of her father. That she thus took as a "lineal descendant," a Class A recipient, not as "any other relative or person," a Class B recipient. This can not be true, for to paraphrase the language of counsel there was no transfer of this property to her upon her father's death by operation of law or otherwise. There was never any vestiture of title thereto in him.

Suppose this property did pass to Mrs. Wilbourn by operation of law. That is not determinative of her classification. Class A recipients remain such whether they take under a will, under the statutes of descent and distribution, or "in any other manner" by operation of law "upon the death of any person." So with Class B recipients. Each is classified according to the relation of such recipients to the donor, not by the method of their acquisition.

As we have seen, Mrs. Wilbourn did not take this estate from her father, for he never had it. She did not take the estate upon the death of her father. She must therefore be held to have taken the property from the testatrix, whose property it was until her death.

The lapsed legacy statute did not vitalize the dead father of this recipient so as to enable him to take and transmit property. It did not infuse any heritable blood into her so as to let her take as the daughter of Mrs. Robertson. This recipient remained the stepdaughter of the testatrix—remained in Class B.

Really we think the estate was taken under the will. It is suggested in some of the decisions considering lapsed legacy statutes that they are supposed to carry out a testator's wishes. That when one makes an absolute gift to another the donor assumes that the recipient at his death will pass on the gift to those having the strongest moral claims upon him, namely, his issue. That accordingly these statutes merely effectuate a final disposition of property that the testator contemplated when he made the absolute gift.

The Court of Chancery Appeals (Tenn.) had this thought in *Grant* v. *Mosely*, 52 S. W. 508, 510, 511. Speaking through Judge M. M. NEIL, the Court said:

"Now, when the rule which was in force before the statute allowed such a legacy or devise to lapse where the legatee or devisee died before the testator, leaving issue surviving the testator, and the will contained no language denying the succession of such issue, it seemed, to the common apprehension, that a palpable injustice was done, and that the purpose of the testator was in fact defeated, although the application of the rule to the given case was logically exact. To meet this apparent hardship the statute was passed. It was not intended as a rule of construction to point out a legatee or devisee, but to continue an estate apparent upon the face of the will."

Counsel for the executor seizes upon the last sentence of the foregoing language as an expression by the court tending to show that the issue of the deceased devisee did not take under the will. The devise there was to a named person and "if she be dead, to her children." One of the children had children of her own. That child and the beneficiary both died before the testatrix. The question was whether the children of the deceased child, the grandchildren of the beneficiary, took any part of the estate. It was held that the grandchildren of the beneficiary took nothing but that the estate passed to the children of the beneficiary, living at the death of the testatrix, as a class. All the learned judge meant by the language relied on was that the statute did not disintegrate the class and point out a legatee or devisee distinctively. He could not have intended to intimate that title to the estate vested in the deceased beneficiary, so as to enable her to transfer title, otherwise the grandchildren would have participated.

Emphasis is laid on the language of the lapsed legacy statute that the issue of the devisee or legatee shall take the estate which the devisee or legatee would have taken had he survived the testator. The issue of the deceased

legatee or devisee does take the same estate. The inheritance tax is not levied on the estate. *Hutchison* v. *Montgomery, supra.* It is a privilege tax which issue pays for the privilege of acquisition and the tax is measured as heretofore stated.

Much reliance is placed on an opinion of the Attorney General in 1928 in a case where the devisee or legatee died before the testator. The Attorney General ruled that the issue of the deceased beneficiary took the property as in the direct line from her, not as collaterals of the testatrix. It is said that this is a construction of our statutes given by an official charged with their enforcement, adhered to for a number of years, which should have great weight with the Court.

We observe, however, that this opinion was based altogether on section 4171 of Mr. Shannon's Compilation, as follows:

"Where any person to whom an estate, real or personal, is devised or bequeathed, died before the testator, leaving issue that shall be living at the death of the testator, the devise or legacy shall not lapse, but shall take effect as if the death of the devisee or legatee had happened immediately after the death of the testator; and the real estate devised in such case shall be vested in the issue of such deceased devisee, in the same manner as it would have vested in the original devisee, unless a contrary intention shall appear in the will."

The foregoing was taken by Mr. Shannon from section 3 of chapter 171 of the Acts of 1841-42. It does not appear in the Code of 1858 nor in the Milliken & Vertrees Code. It was evidently regarded by the Court as obsolete in 1889, for in *Dixon* v. *Cooper, supra,* decided that year, it was quoted, in substance, and referred to as the English statute, not as a part of the laws of Tennessee.

■ Certainly this section of Shannon's Code is no part of the law of Tennessee today. It was omitted from the Code of 1932 and under section 2 of the Code must be considered as repealed.

Section 3 of chapter 180 of the Acts of 1851-2, which our present lapsed legacy statute follows, was carried into the Code of 1858 at section 2196, into the Milliken & Vertrees Code at section 3036, into Shannon's Code at section 3928, and into section 8134 of the 1932 Code. That statute was taken by the Court in Dixon v. Cooper to embody our law on the subject.

Reference is made to *White* v. *Kane*, 178 Tenn. 469, 159 S. W. (2d) 92, where this Court adopted an opinion of Chancellor WADE, in which opinion the chancellor said that section 4171 of Shannon's Code and section 8134 of the Code of 1932 were identical in meaning. The chancellor here was considering the proper construction to be placed upon the word issue, whether the gift to the deceased legatee was to be divided among his issue per stirpes or per capita. The statutes doubtless do mean the same thing so far as that question is involved. That, however, is far from saying that they mean the same thing in determining at what rate the issue of a deceased legatee is to be taxed for the exercise of the privilege of acquisition. The statutes do not mean the same thing for the latter purpose. Under the English statute title vests in the deceased legatee or devisee, enabling him to transmit title. Our statute is not so construed. *Dixon* v. *Cooper, supra,* shows the difference.

We have not found it necessary to consider the decisions of other states which counsel have collected with industry and submitted with discrimination. As said by all counsel, revenue statutes and lapsed legacy statutes differ in the different jurisdictions. Our own lapsed

legacy statute has been heretofore construed by this Court and we adhere to the construction so given to it. The classification of recipients for inheritance taxation is too plain under Code Sec. 1266 to require consideration of rules of statutory interpretation.

Our conclusion is that Mrs. Wilbourn took this estate from the testatrix either under the will of the latter or in another "manner by operation of law upon the death of" the testatrix. That Mrs. Wilbourn took from no person other than testatrix. That being a stepdaughter of the testatrix, Mrs. Wilbourn took this estate as a Class B recipient.

The decree of the chancellor will be reversed and complainant's bill dismissed.